CHEHARDY, Judge.
Defendant, Baggett Transportation Company, appeals a trial court judgment awarding the plaintiff, Dan Skinner, workmen’s compensation at the rate of $95 per week for 32 weeks subject to a credit for compensation already paid, 12% penalties and an attorney fee of $600 plus legal interest on total compensation due from date of judgment, and for all costs of the proceedings. The plaintiff has answered the appeal, asking that he be found totally and permanently disabled; that he be provided with all medical expenses; and that his attorney fees be increased.
*557 Skinner was employed by Baggett as a tractor trailer driver, and one of his responsibilities was to assist in loading and unloading freight weighing from 25 to 80 pounds. In August of 1977, Skinner suffered an injury to his back while unloading barrels of “swimming pool granular”, which he estimated weighed between 60 and 65 pounds. Plaintiff was then sent to the company physician, Dr. Robert J. Segura, Jr., for treatment.
The plaintiff testified he returned to work for three days in September of 1977 and reinjured his back while handling rolls of carpet. At the time of the first injury, the plaintiff’s rate of pay was $5.50 per hour; however, he avers that when he returned to work during September his salary had been increased to $6.45 per hour. Skinner was paid compensation by Baggett at the rate of $95 per week from the time of the first injury until November of 1977, when the plant was closed. The plaintiff also testified he had been unable to secure other employment, due to the condition of his back, until two weeks before the time of trial, which occurred in June, 1980. At that time he was again hired as the trailer driver operating a boom with an electric crane, a position which required no lifting.
Dr. Segura testified that although an initial x ray of Skinner was read as showing a fracture through one of the vertebrae, the back injury appeared to him, on further study, to be mainly ligamentous with some swelling in the area of the nerves, for which he prescribed bed rest, medication for pain, muscle relaxants and heat.
Dr. Segura further testified that since no surgery was indicated Skinner was sent back to work on September 22, 1977, restricted to light duty. He also said the plaintiff returned complaining of problems again, but his records did not reflect a report of another injury. He added he again saw the patient on October 22, 1977, and allowed him to return to work with a limitation of his lifting load to 50 pounds, and he stated further that he released Skinner for work without restrictions on November 1, 1977. Plaintiff was seen by Dr. Segura intermittently until January 20, 1978, when he was discharged. Dr. Segura stated that a note presented at trial by Skinner still restricting his lifting as of November 1, 1977 was not written by him but by his nurse.
Dr. Eugene Dabezies, an orthopedic surgeon, consulted by Skinner in February, 1978, at the request of the plaintiff’s attorney, found that x rays of the lumbar spine revealed no fractures and was of the opinion that plaintiff had sustained a sprain of the lower back and was still having some persistent symptoms. He prescribed aspirin and a corset, and recommended Skinner gradually increase his activity. His conclusion was that “I think this man is recovering and I believe he is going to eventually get back to what he was doing before.”
The defendant argues that its termination of compensation was based upon competent medical evidence, that it was not arbitrary and capricious and, therefore, the trial court should not have awarded the plaintiff penalties and attorney fees. The defendant also contends the trial court erred in awarding the plaintiff a total of 32 weeks of compensation and in obviously having concluded that the plaintiff was in substantial pain for this amount of time.
Plaintiff, on appeal, argues that his current disability is due to the second accident, which occurred in September of 1977 when he attempted to return to work, that he is entitled to the maximum payments which became effective September 1, 1977, as opposed to the $95 per week maximum benefit which was effective prior to that date, and also asks that he be declared totally and permanently disabled, or, in the alternative, permanently and partially disabled. He also requests an increase in attorney fees to cover the expenditures of appeal, in addition to unpaid medical expenses.
We affirm the trial court’s judgment.
LSA-R.S. 23:1221, regarding the schedule of payments for temporary, permanent or partial disability, states in part:
“Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
*558 (1) For injury producing temporary total disability of an employee to engage in any gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability.
(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability.
(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability, but not beyond a maximum of four hundred weeks for such partial disability resulting from injury occurring on or after September 1, 1975, and on or before August 31, 1976; and not beyond a maximum of four hundred twenty-five weeks for such partial disability resulting from injury occurring on and after September 1, 1976, and on or before August 31, 1977, and not beyond a maximum of four hundred fifty weeks for such partial disability resulting from injury occurring on and after September 1, 1977; provided further that for any week during which the employee is paid any compensation under this subdivision (3) the employer shall be entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable under this subdivision * *
LSA-R.S. 23:1202 states, regarding maximum and minimum amounts payable by employers in workmen’s compensation benefits:
“(1) The maximum compensation to be paid under this Chapter for injuries occurring on or after September 1, 1975, and on or before August 31,1976, shall be eighty-five dollars per week and the minimum compensation shall be twenty-five dollars per week; and for injuries occurring on or after September 1, 1976, and on or before August 31, 1977, the maximum weekly compensation to be paid under this chapter shall be ninety-five dollars per week and the minimum compensation shall be thirty dollars per week. For injuries occurring on or after September 1, 1977, the maximum weekly compensation to be paid under this Chapter shall be sixty-six and two-thirds per centum of the average weekly wage paid in all employment subject to the Louisiana Employment Security Law and the minimum compensation shall be not less than twenty per centum of such wage, said maximum and minimum to be computed to the nearest multiple of one dollar. In any case where the employee was receiving wages at a rate less than the applicable minimum compensation, the compensation shall be the employee’s ‘wages’.”
The record supports the trial court’s finding that plaintiff could not be considered totally and permanently disabled since he can perform, and was performing at the time of trial, some type of work for *559 wages. Lachney v. Cabot Corporation, 368 So.2d 500 (La.App. 3d Cir. 1979); LSA-R.S. 23:1221(2).
Neither can plaintiff be considered partially and permanently disabled. At the time of trial he was once again employed as a tractor trailer driver at a rate of pay ($4.50 per hour) approximate to that which he was earning at the time of his injury ($5.50 per hour), and neither physician testified at trial that he expected Skinner’s back sprain to be a permanent condition.
The record substantiates the factual conclusion that the plaintiff’s injury was due to the accident of August, 1977 and not the alleged accident of September, 1977. Under the terms of LSA-R.S. 23:1202, therefore, Skinner was limited to maximum compensation benefits of $95 per week as awarded.
In regard to the question of attorney fees, LSA-R.S. 23:1201.2 states in pertinent part:
“A. Any employer whose liability for claims arising under the provisions of this Chapter is not covered by insurance, shall pay the amount of any claim due under the provisions of this Chapter, within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the employer to a penalty, in addition to the amount of claim due, of 12% of the total amount of such claim, payable to the claimant, together with all reasonable attorney’s fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due, and all reasonable attorney’s fees for the prosecution and collection of such amount. Any such employer who at any time discontinues payment of claims due and arising under the provisions of this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the penalties set forth above, payable to the claimant, together with all reasonable attorney’s fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney’s fees shall not apply in cases wherein the employer is found liable for penalties and attorney’s fees under the provisions of this Section.”
The court in the case of Morgan v. Lumbermen’s Mutual Casualty Company, 317 So.2d 7 (La.App. 1st Cir. 1975), stated an accepted principle of jurisprudence at page 14:
“Generally when an insurance company bases its decision to discontinue compensation benefits on the report of a competent physician that an employee has recovered from his injuries to the point of ability to resume the duties of his employment, it will not be held liable for penalties and attorney’s fees, since reliance on a medical report is with probable cause and not. therefore arbitrary or capricious. * * *”
In the present case, however, although Dr. Segura testified his records reflected he had released Skinner for full duty as of November 1,1977, the employer’s note, sent by the physician’s office to Bag-gett, indicated the plaintiff was still restricted as to lifting, and, therefore, should have been considered partially disabled by the defendant. Since the company terminated Skinner’s compensation without reliance on a medical report, we hold this action was arbitrary and capricious on its part, rendering it liable for the penalties and attorney fees imposed by the trial court.
We do not, however, agree with the plaintiff’s argument that his attorney fees should be increased for services on appeal, for the reason that he has asked for additional relief which this court has denied. As articulated by the court in Conlay v. Houston General Ins. Co., 370 So.2d 196, 201 (La.App. 3d Cir. 1979):
“Plaintiff also requests additional attorney’s fees for the legal services re *560 quired on appeal. An increase in attorney’s fees for services on appeal is usually awarded when the defendant appeals and obtains no relief on appeal, and the plaintiff requests it in accordance with proper appellate procedure. The basis for awarding additional attorney’s fees is that the litigant successful at the trial level must incur additional expenses, which otherwise would not have been incurred, in order to protect his rights on appeal. Horn v. Vancouver Plywood Corporation, 322 So.2d 816 (La.App. 3rd Cir. 1975). In this case, plaintiff is not only protecting his rights relative to defendant’s appeal, but is also seeking additional relief denied at the trial level and denied on appeal, viz., a declaration of total disability. Under these circumstances, we find that additional attorney’s fees for services rendered on appeal are not warranted.”
Regarding the denial of an award for medical bills of Dr. Dabezies, this court finds that the trial court acted within its discretion.
For the reasons assigned the judgment of the district court is affirmed in all respects.

Affirmed.