434 So.2d 65 (1983)
Ronald P. ORGERON, Sr.
v.
TRI-STATE ROAD BORING, INC., et al.
No. 82-C-2577.
Supreme Court of Louisiana.
May 23, 1983.
Rehearing Denied June 24, 1983.
*66 Daniel E. Becnel, Jr., Reserve, for applicant.
Richard L. Edrington, Laplace, George Ann Hayne Graugnard, Edgard, Accardo, Carville, Edrington, LeBlanc & Golden, Laplace, for respondents.
BLANCHE, Justice.
The plaintiff, Ronald Orgeron, has sued his former employer, Tri-State Road Boring, Inc., and its workmens' compensation carrier, United States Fidelity & Guaranty Co., for total and permanent disability benefits, medical expenses, penalties and attorney's fees. It is undisputed that Orgeron was injured in the scope of his employment on December 19, 1978 while climbing from an excavation pit where he had been operating a piece of heavy machinery. Orgeron slipped on a piece of pipe and fractured his left ankle. The injury was surgically corrected, and USF & G paid 102 weeks of compensation benefits at $141.00 per week, for a total of $14,382.00, plus $8,548.84 in medical expenses. USF & G discontinued payments on December 5, 1980, after viewing videotapes of Orgeron allegedly performing physical labor at various construction sites. The tapes had been made during the course of a continuous surveillance of the plaintiff commissioned by the defendants.
The trial court, relying heavily on the videotapes, ruled that the plaintiff had failed to prove any disability. The court of appeal found that the trial court had accorded too much weight to the videotapes, but nevertheless ruled that the plaintiff had failed to prove total or partial disability under the "odd-lot" or "substantial pain" doctrines. However, we are of the view that the plaintiff has established by a preponderance of the evidence that he is partially and permanently disabled. Accordingly, we reverse.

EXTENT OF THE DISABILITY
Orgeron claims that he is totally and permanently disabled because he cannot return to the same type of work he was performing at the time of the accident. He asserts that substantial pain prevents him from returning to the type of physical labor which had been required of him prior to the accident and would have us characterize him in the "odd-lot" category of disabled workers.
In Oster v. Wetzel, 390 So.2d 1318 (La.1980), we adopted the so-called "odd-lot" doctrine which provides that the claimant is entitled to a total and permanent disability when he establishes a prima facie case that, because of the physical impairment and other factors such as mental capacity, education, and training, he can perform no services other than those which are so limited in quality or dependability that a reasonably stable market for them does not *67 exist. 390 So.2d at 1324. The odd-lot concept may also be applied in cases where the worker, because of his injury, is in such substantial pain that work becomes an overburdening task. Calogero v. City of New Orleans, 397 So.2d 1252 (La.1980); Lattin v. Hica Corp., 395 So.2d 690 (La.1981); Busang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980); Whitaker v. Church's Fried Chicken, Inc., 387 So.2d 1093 (La. 1980).
Based on the evidence in this case, we must conclude that Martin is not totally disabled under either the substantial pain or broader odd-lot doctrine. However, we do find, by a preponderance of the evidence, that Orgeron is permanently and partially disabled.
In our opinion, the plaintiff has failed to prove that he is totally disabled. Our examination of the record shows that Orgeron is not so lacking in mental capacity, education or training that, in conjunction with any residual physical impairment, he can perform no services other than those which are so limited in quality or dependability that a reasonably stable market for them does not exist. The record reflects that Orgeron, age 47, has worked as a foreman for various employers over the eleven years immediately preceding his injury. His treating physician opined that he could work in any supervisory capacity and perform a full day's work as a heavy equipment operator; Orgeron himself stated that he could render "technical assistance" at job sites. Orgeron gave conflicting testimony as to whether he had pursued any other employment following his injury; yet the record does not reflect that he cannot pursue a career at least substantially consonant with his employment prior to the injury. Furthermore, the record does not reflect that substantial pain renders Orgeron incapable of engaging in any sort of gainful occupation. Medical testimony indicated that while pain might prevent the plaintiff from engaging in heavy physical labor for a full eight hour work day, pain would not prevent him from engaging in a supervisory position or other more sedentary occupation where the ankle would get more frequent rest.
Although Orgeron is not totally and permanently disabled, he is not precluded from receiving any compensation award at all. Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982); Dodd v. Nicolon Corp., 422 So.2d 398 (La.1982); Schouest v. J. Ray McDermott and Co., Inc., 411 So.2d 1042 (La.1982). An employee may be deemed partially disabled if he is unable to perform the same duties in which he was customarily engaged when injured, or duties of the same or similar character for which he is fitted by education, training or experience. LSA-R.S. 23:1221(3). We find that the preponderance of the evidence establishes conclusively that the plaintiff, Ronald Orgeron, is permanently and partially disabled.
Orgeron's treating physician, Dr. Robert Fleming, assigned a 50% permanent disability rating to the ankle and lower leg and opined that Orgeron would require continuous pain medication. The examining physician of the defendants, Dr. Dabney Ewin, assigned a 21% permanent disability to the ankle and lower leg. All medical testimony established conclusively that Orgeron could not return to the heavy physical labor to which he had been accustomed prior to the accident. Since the plaintiff is no longer able to perform such tasks, but may be able to perform supervisory tasks and operate heavy equipment as he had prior to the accident, he may be deemed permanently and partially disabled. Cf. Martin H.B. Zachary Co., supra; Dodd v. Nicolon Corp., supra; Naquin v. Uniroyal, Inc., 405 So.2d 525 (La.1981); Lattin v. Hica Corp., supra.

BENEFITS DUE
Since Orgeron was injured on December 19, 1978, he is entitled to weekly compensation benefits not to exceed 450 weeks from that date, with a credit to USF & G for benefits previously paid and for those weeks in which actual wages are earned by the plaintiff. Should Orgeron become employed subsequent to rendition of this judgment, he will be entitled to compensation at *68 the rate of 662/3% of the difference between his weekly wages earned at the time of the injury and his weekly wages actually earned tereafter. If there occur any weeks in which Orgeron's weekly wage exceeds his weekly wage at the time of the accident, then Orgeron is entitled to no compensation during that period. LSA-R.S. 23:1221(3); Martin v. H.B. Zachry Co., supra; LeBlanc v. Commercial Union Assur. Co., 349 So.2d 1283 (La.App. 1st Cir.), writs denied, 351 So.2d 174 (La.1977). The maximum weekly compensation to be paid by USF & G is 662/3% of the "average weekly wage paid in all employment subject to the Louisiana Employment Security Law," with the minimum not less than 20% of such wage, computed to the nearest dollar. The "average weekly wage" is determined by the administrator of the division of employment security on or before August 1 of each year, and the average weekly wage in effect at the time of the injury on December 19, 1978 is the figure applicable during the full 450 week period during which compensation is payable. LSA-R.S. 23:1202. Orgeron's weekly benefits are to be calculated by USF & G according to this formula. Legal interest shall accrue on all past due payments from date due until paid.
Orgeron has also requested that the defendants pay the medical expenses which he has incurred in receiving medical treatment subsequent to the termination of his benefits on December 5, 1980. His medical expenses incurred up until that time were paid by the defendants. Under LSA-R.S. 23:1203, the defendants are required to pay for all necessary medical, surgical, and hospital services, plus medications and any other non-medical treatment recognized by this state as legal, such as chiropractic care, which might be incurred by the plaintiff. Additionally, the defendants must pay the actual expenses and mileage reasonably and necessarily incurred by Orgeron in order to obtain the services, medications, or prosthetic devices which the defendants are required to furnish under this section. Gourdan v. Rockwood Ins. Co., 368 So.2d 1156 (La.App. 3rd Cir.1979); Alexander v. Reed, 350 So.2d 179 (La.App. 1st Cir.), writs denied, 350 So.2d 1206 (La.1977); Reed v. Employers Mut. Liability Ins. Co. of Wisconsin, 303 So.2d 506 (La.App. 2nd Cir. 1974); Dyson v. Travelers Ins. Co., 256 So.2d 468 (La.App. 4th Cir.1972). Therefore, the defendants are hereby ordered to pay for all of the above enumerated medically-related expenses actually incurred by Orgeron as necessary to the treatment of his injured ankle.

PENALTIES AND ATTORNEY'S FEES
Finally, Orgeron claims that the termination of benefits by the defendants and their failure to reinstitute payment was arbitrary and capricious, and, as such, makes the defendants liable to him for penalties and attorney's fees. Under LSA-R.S. 23:1201.2, if the termination and failure to reinstitute payment are found to have been arbitrary, capricious, or without probable cause, the employer may be compelled to pay a penalty of 12% of the total amount of the claim, together with all reasonable attorney's fees incurred by the claimant in prosecution of the claim. In our opinion, the termination of benefits in this case was arbitrary, capricious and without probable cause, therefore the defendants will be required to pay the penalty and the attorney's fees incurred by Orgeron in the prosecution of this suit.
In this case, USF & G had no reasonable basis for terminating benefits. The termination was precipitated by videotapes or Orgeron allegedly performing physical labor at various construction sites. The tapes had been made pursuant to a continuous surveillance of the plaintiff commissioned by the defendants. As noted by the court of appeal in its consideration of this case, evidence in the form of moving pictures or videotapes must be approached with great caution because they show only intervals of the activities of the subject, they do not show rest periods, and do not reflect whether the subject is suffering pain during or after the activity. See Costanzo v. Southern Farm Bureau Cas. Ins. Co., 124 So.2d 621 (La.App. 3rd Cir.1960); Gagliano v. Boh Bros. Constr. Co., 44 So.2d 732 (La. *69 App. 4th Cir.1950). The investigator who shot the tapes testified that they show only about two and one-half hours of activity over three separate days, and we agree with the court of appeal that the videotapes do not show that Orgeron could engage in the heavy physical labor to which he had become accustomed prior to the injury.
Here, the defendants had been receiving regular reports from Dr. Fleming on the plaintiff's condition, and Dr. Fleming had advised the defendants that he had assigned a 50% disability rating. The defendants sent Orgeron to an examining physician of their own choosing, and the physician assessed Orgeron's disability rating at 21%. Ignoring the medical evidence and relying solely on "information that Mr. Orgeron had been working," the defendants terminated benefits. It is incumbent upon insurers to make a reasonable effort to ascertain an employee's exact medical condition at the time benefits are terminated. Salvador v. Slidell Industries, Inc., 415 So.2d 511 (La.App. 1st Cir.1982). Termination of benefits on the basis of inconclusive videotape evidence in total disregard of competent medical evidence which established conclusively that Orgeron had at least a partial permanent disability rating of between 21% and 50% was arbitrary and capricious and renders the defendants liable for penalties and attorney's fees. Cf. Alexander v. Dept. of Culture, Recreation and Tourism, 410 So.2d 1286 (La.App. 3rd Cir. 1982); Skinner v. Baggett Transp. Co., 391 So.2d 555 (La.App. 4th Cir.1980).
Therefore, the defendants will be cast in judgment for a penalty of 12% of the total amount of the claim. The award of attorney's fees is in the form of a penalty and the amount need not be proved. See Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3rd Cir.), writs denied, 379 So.2d 1102 (La.1979). However, the award of a reasonable fee is within the broad discretion of the trier of fact, and our review of the record shows that the plaintiff has only requested a "reasonable fee." Since there has been presented no dollar figure for our review, the case will be remanded to the court of appeal, where the entire record has been lodged on appeal, for the limited purpose of determination of a reasonable attorney's fee. See Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975). Since this case has been taken on appeal to this court via the court of appeal and was necessitated by the arbitrary refusal of the defendants to pay the compensation to which the plaintiff is so clearly entitled, the attorney's fees awarded may include those for services rendered since trial on the merits. Duffour v. Hartford Cas. Ins. Co., 359 So.2d 720 (La. App. 4th Cir.1978).

DECREE
Therefore, for the reasons assigned, the judgments of the trial court and court of appeal are reversed. The plaintiff is entitled to partial permanent disability benefits pursuant to the provisions of LSA-R.S. 23:1221(3), dating from December 1978, not to exceed 450 weeks, subject to a credit for prior benefits paid and any wages which might be earned by the plaintiff subsequent to the rendition of this judgment. Legal interest shall accrue on all past due payments from date due until paid. The plaintiff is entitled to all medically-related expenses actually incurred and necessary for the correction and treatment of his injured ankle as set out in LSA-R.S. 23:1203. The plaintiff is also entitled to a penalty amounting to 12% of the total amount of the claim, and all costs of these proceedings are taxed to the defendants. The case is remanded to the court of appeal for the limited purpose of determination of a reasonable attorney's fee for the plaintiff.
REVERSED AND REMANDED.

ON REHEARING
PER CURIAM.
We grant the defendants' application for rehearing only to clarify that portion of the judgment which held the defendants liable for 12% of the "total amount of the claim." The penalty amounts to 12% of the total amount of the claim due, and does not attach to future *70 payments payable by the defendants. Dickerson v. Taylor, 385 So.2d 467 (La.App. 1st Cir.), writs denied, 392 So.2d 669 (La. 1980); Kilbourne v. Armstrong, 351 So.2d 802 (La.App. 1st Cir.1977). Moreover, the penalty is calculated only on the difference between the amount already paid by the defendants and the remainder of the amount due. LSA-R.S. 23:1201.2.
The defendants' application for rehearing is denied in all other respects.